I believe by 10. Ms. Raymond? Good morning. May it please the Court, Your Honors. Counsel, my name is Stephanie Raymond and I represent the people of the state of Illinois in this matter. The trial judge erred in granting defendants petition to rescind his statutory summary suspension. The stop in this case was recorded and the video is part of the record on appeal. Officer Gilbert was sitting near an intersection when he observed the defendant's vehicle approaching the intersection at what appeared to be a faster rate of speed than the posted speed limit. He radared the defendant's speed using his handheld radar and the speed was 46 mph in a 30 mph zone. At that point, he activated his lights and pulled the defendant over. He approached the defendant's vehicle and began to speak with him, asking him for license, registration and insurance. Initially, the defendant could not find his insurance information, so he can be heard on the video calling his mom to try to figure out where it's at. While Officer Gilbert is speaking with the defendant, he notices that the defendant has glassy, watery eyes, understandable with slurred speech and notices that there are empty beer cans in a beer box in the backseat of the defendant's vehicle. At that point, he asks the defendant to step out of the vehicle and then take some field sobriety tests. Prior to taking the tests, he asks the defendant if he has any health issues. The defendant replies that he has a back issue and then Officer Gilbert asks him, is he healthy enough to complete the tests? The defendant replies yes and then he begins to administer the tests. The first test was the horizontal gaze nystigmus test, which is the eye test. In that test, the defendant indicated 6 out of the 6 signs for impairment. The next test was the walk and turn test and the defendant exhibited 5 of the 8 signs of impairment in that test. The final test was the one leg stand test and he exhibited 4 of the 4 indicators for consumption, signs of impairment in that test. During the walk and turn test and the one leg stand test, he had balance issues. He had to be told the direction several times. After the completion of these tests, the officer asked the defendant if he would take a portable breath test and the defendant agreed that he would take the test. The test was administered and the defendant registered a .099 on that test. At that time, Officer Gilbert placed the defendant under arrest for DUI. He asked the defendant, when is the last time you had a drink? He said it had been at 2 o'clock earlier that day. However, when he initially asked him, it was, I have had nothing to drink. The defendant has the burden of establishing a prima facie case for a rescission of the suspension. If he meets that burden, it then shifts to the state and the state must then show or justify the suspension. Whether or not an officer has reasonable grounds to arrest for DUI is synonymous with probable cause. In this case, there was probable cause for the officer to arrest the defendant for DUI when he failed all of the field sobriety tests, exhibited physical signs of impairment, changed his stories about when it was that he last had a drink and then the PBT registered the .099. The courts have found less than this to justify probable cause where in People v. Rush particularly, the defendant was found to have failed one of the field sobriety tests. He admitted to drinking the night before. He had glassy, watery eyes and the PBT showed a .07. The court found in that case that that was enough for the officer to arrest him for DUI. Here again, we have more than that. We have him failing all of the field sobriety tests, exhibiting physical signs and with the PBT registering .099. Also in Rush, one of the important things that they brought up in the trial judge in this case brought up was the defendant's speech. It's slurred but understandable and that's one of the things that Rush touched on. Your speech can be slurred but still understandable. So that's the people's position. That was one of the many signs that showed that he had probable cause for the arrest. One of the other things that defendant argues is that the PBT was not admissible at the hearing. However, the courts have found that PBT tests are admissible in these types of hearings, statutory summary suspension hearings, just not as evidenced at a DUI trial. The defendant also argues that the state failed to provide testimony regarding this admissibility, but it's the people's position that the burden never shifted to them broadening those requirements and that the PBT was admissible, the purpose of which is to determine probable cause, and that was an aid in this case to show that defendant was impaired and could not drive. Without the PBT, there were several signs that he was driving under the influence with the failed tests and the physical signs and the changing of the stories. If there are no further questions, we would just ask that you reverse. Thank you. Mr. Wallace. Thank you, Your Honor. In support, Your Honors. Counsel for the State, Mr. Hamel. At this time, I'd like to reintroduce myself. My name is Terry Wallace. I represent with Mr. Hamel, Mr. Luis Rosillo. He was a petitioner of sin that was heard before Judge Goodman in Joliet. I'd briefly like to go through the facts on this case. On April 6th of 2017, our client was driving southbound on Parker Road. He was speeding, 46 in the 30s. I'd submit, Your Honors, it's not an excessive speed. Turns left on Navajo, uses his turn signal. He's followed for approximately two or three blocks. Driving is perfect. And overhead lights come on, uses his turn signal, pull over on the side of the road. The officer approaches. This is Deputy Gilbert from Lowell County Sheriff's Department, who's made eight or nine prior DOI arrests before this. Speaks to our client. His speech, according to the video, is not slurred whatsoever. He's responding to the officer, giving appropriate answers. He's asked for his license. He has no difficulty producing his license. Asked for his insurance, can't find his insurance. Gets on his cell phone, calls his mom, produces, talks to his mom, making sense on the phone with his mom. No problem with his physical dexterity using his cell phone. He's thinking and acting with ordinary care. Shortly thereafter, there's a conversation with the police officer about any prior tickets within the last five years. Our client mentions a prior DOI. And the whole tone changed from a routine traffic stop for speeding only to something more than that. And the judge, Judge Goodman, was questioning the officer's credibility once she observed and testified, comparing his testimony to the video. So, at any rate, our client says he has to step out of the car. No problem exiting the car. Walks back 15 to 20 feet. Balance is perfect. HGN test, which I'd submit to your honors, only shows consumption of alcohol under people versus McCune or McCown, however that is pronounced. And his balance follows the instructions on the HGN. Balance is fine. Performs a walk-and-turn and one-legged stand test. Before that, he takes his sweatshirt off, no difficulty. During the instruction phase of the walk-and-turn test, our client asked the officer if he could take off his shoes. He has no difficulty taking off his work boots. So up to this point in time, his balance is good. There's no problems. He performs a walk-and-turn test. But before that, he had some lower back issues because he's a mechanic. Does the walk-and-turn test. Nine steps down, nine steps back. 17 out of 18 are on the line. 17 out of 18, his arms are aside. Looks good on the video. He has some problems with the test to a certain extent, but are those consistent with someone who's impaired or not thinking or acting with ordinary care? I'd submit, Your Honors, when you watch the video, it's just someone who may have a problem with his balance and may. Let me ask you that. Yes. I'm wondering because I have watched the video, and I was kind of wondering if you watched the same one. I've seen this fellow stumble a couple of times at least. I noticed when he was doing the turn, when he would start counting, he would take about one or two steps off sometimes before he started the count. Does that sound like what you saw? I saw the video, and he took, like I represented, Your Honors, the appropriate number of steps, 17 out of 18 were on the line. It wasn't perfect. You know, I want to ask you about something. You mentioned the trial judge questioned the credibility, and one of the comments she made leads me to believe that she misunderstood the officer's testimony because she said, well, she seemed to be under the impression that the officer testified that after your client made the left turn, that that's when he said he clocked the car. And she said, well, how could he have? The guy no sooner turned than the officer turned around, did the U-turn, and I don't see how he would have had time to have clocked him with a radar during that period of time before he made the U-turn, which leads me to believe she thought the testimony was that he was clocked after he made the left turn as opposed to as he was approaching the intersection, which is what the officer testified to, as you pointed out. And so when she's judging his credibility, it seems clear to me that she misunderstood his testimony also. Well, I wouldn't characterize it as misunderstanding. I mean, the basis of the stop is not why we're here today. It's whether or not there was reasonable grounds to place him under arrest, and she said there was essentially enough to stop him, and it was speeding only, which wasn't an excessive speed, which wouldn't lead someone to believe that these – I mean, speeding alone doesn't show impairment. Well, I'm not suggesting it does, but also, to be impaired, one doesn't have to be sloppy, falling down drunk, you know, under the influence. So the fact that somebody can retrieve their driver's license, I mean, isn't necessarily evidence that they're not impaired in some way. I mean, we have pretty low limits now, you know, 0.08. I think when I started driving, it was 0.15. And so the fact that this guy wasn't falling down drunk and couldn't stand up at all or something like that, you know, the classic sloppy drunk, the state doesn't have to show that to show probable cause for an arrest, right? It's only reasonable grounds. I agree. It's not proof beyond a reasonable doubt, but his actions on the video, he's thinking and acting with ordinary care. And just because someone – I agree with you. Sloppy drunk, I mean, that's not the burden here, but he looks like he's – on the video, he's walking around, doing everything properly. He has a little bit of difficulty on the walk and turn test and the one-legged stand test. But he said he had back issues, and the officer characterized these tests as simple balance tests. And I question that because if they're simple balance tests, why do they go through all that training to administer those divided attention tests? Those are hard tests to do regardless of anything. I mean, whether or not you've had anything to drink or whether or not you have any back, leg, or any type of medical issue with that. They're difficult. And when you look at the totality of the circumstances, from the driving to the field sobriety test to how he's walking, doing everything else, and one thing I want to point out is the state seems to think his speech was slurred but understandable. The state chose to call Mr. Russo as a witness. And the trial judge, Judge Goodman, characterized – said his speech was clear as a bell, clear as a bell today as it was on the video. And his speech was good. Eyes were glassy and watery, not bloodshot, and it was only an odor of alcohol. I'd submit, Your Honors, that all it was was – this was someone who consumed alcohol. It's only 6.36 in the afternoon, early evening. I mean, the time of day certainly isn't a major factor, but more DUIs occur later on at night than earlier in the afternoon. And he admitted to drinking earlier in the day. At first, he denied drinking. And when he was questioned on a witness stand, why did he say that? I don't know why he said that. That was his response. And the state makes a big deal about his responses. I don't know why he said that, but it's something we say every day. I don't know why he just said that. That was stupid. Okay? And everybody's a little bit nervous when they're dealing with the police. So his actions, the evidence was consistent with the way the judge viewed it. She had the opportunity to determine the credibility of the witnesses. It was not – the decision was not – the opposite conclusion was not apparent for the burden for against the manifest ways of the evidence. The findings were not unreasonable, arbitrary, and not based on the findings. And I want to touch on the PBT, because after the field sobriety test, the officer goes back to his car, he says, wait right here, goes back to his car, grabs a PBT, walks up to Mr. Ursula, doesn't say he's got the PBT. He says, what I'd like for you to do is to blow into this like you're blowing up a balloon. And Mr. Ursula says, okay. And then the officer says three times, keep blowing, keep blowing, keep blowing. And we objected to the PBT being admitted in evidence. It was played on the video. The result was never showed. I believe it wasn't showed on the video. But we objected – I objected to the foundation for the PBT, because a foundation has to be laid. Under People v. Gutierrez, the PBT, an officer cannot command a person to take the PBT. And here, the officer's actions were consistent with an order. It wasn't specifically, I want you to do this and blow into this right now. But basically, our client, this officer wasn't going to take no for an answer with his actions. What I'd like for you to do is blow into this like you're blowing up a balloon without even identifying the instrument. I mean, why didn't the officer say to the deputy, this is a PBT. I have one final test for you. Would you like to take it? And even though Mr. Ursula said okay, I mean, what was that okay for? Because he understood the instructions for the officer about blowing up a balloon or agreeing to take the test. The state had the opportunity to question Mr. Ursula when they called him as a witness. They never asked that. Were you agreeing to take the test? And I'd submit to your honors as well, right after the test, Mr. Ursula goes, you didn't ask me if I would take one. And that's just his reaction to the PBT not being offered to him. So it was never offered to him. Then also under Peep v. Taylor, not only does it have to be offered, but then a person has to have an opportunity to refuse. And this whole incident with the PBT occurred over 8 to 10 seconds. What I'd like you to do is blow into this like you're blowing up a balloon, keep blowing, keep blowing. And Mr. Ursula's saying, okay, keep blowing, keep blowing, keep blowing. That's approximately 10 seconds. And he was never given a proper opportunity to refuse the PBT, which is required under Peep v. Taylor. So I'd submit to your honors the foundation for that in order,  And since we shifted the burden at the summary suspension hearing, the burden shifts to the state under Peep v. Acevedo, which is another third district case before your honors. And once the burden shifts, then the state has to lay a foundation for the PBT, which includes whether or not it was a model approved by the state police, whether it was certified within 93 days, and whether or not they followed the operational guidelines when administering it, and whether or not one test was administered. And none of that was ever done. The burden shifted to the state. And they never presented any evidence to that. So I'd submit to your honors the PBT based on those three factors, Gutierrez, Taylor, and Acevedo. It should not be considered by the court. There was no, he was ordered to take the test. There was no, after the order, there was no opportunity to refuse. And then the state member laid a foundation under Peep v. Acevedo to submit the Does the officer have to explain to the driver that you don't have to take this test, you have the right to refuse it? No, under the case law, I don't believe the officer has to say, you don't have to take this test. But he should offer it to him saying, I have one test for you, or one final test, asking if you'd like to take it. And if the person goes, do I have to take it? I don't believe the officer has to go into a big conversation about it. He just has to offer the test to him. I don't believe one of these facts was ever offered to him. It was more along the lines of an order. And what's important here is thinking and acting with ordinary care. And I stated this before. We all know this, and I don't like to say this, but it's not against the law to drink and drive. Some people go out after work, and they have a couple of beers, and they drive home. Just because someone has an odor of alcohol on their breath, which is just an odor here, it was never characterized as strong, moderate. There were two people in the car, it was coming from my client's breath. He's doing everything properly, responding to the officer, the field sobriety test. There's back issues. And the PBT was never offered. He was never given an opportunity to refuse. And then the state never laid a foundation. So all in all, the findings that the trial court made were proper, and it was not against the manifest way to the evidence. And I'd submit to your honors Judge Gooden was right, and I'd ask for a firmer ruling. Thank you. Counsel? Ms. Raymond, some rebuttal? Just a few short points about the tests. Our counsel says the defendant wasn't having any balance issues during the HDN test. The HDN test doesn't test balance. So the test that tested balance is when he had issues with his balance. And also the trial judge said, you know, he brought up this issue of credibility, but she said, did he have probable cause to stop defendant? And she said, absolutely, if he was speeding. So in this case, he was speeding. So there was probable cause. With the issue of the PBT, just for ---- Just so we're clear, I don't think the defendant's arguing there was no probable cause for the stop. They're arguing about probable cause for a DUI arrest. Right. Just the stop then led to the arrest. Just regarding the PBT, what the officer said is, what I would like to ask you to do is blow into this like you're blowing up a balloon, okay? Defendant says, yep. And then that's when the officer puts the device up to his mouth, and then defendant blows. And he says, keep blowing, keep blowing, keep blowing. When it's done, defendant says, you didn't ask me if I would take it. And the officer says, I did just ask you if you would take it. As was already covered, they're not required to explain the instructions ad nauseam. He asked them. Defendant agreed. He took the test. It registered .099, and that is when defendant admitted to having alcohol earlier that day. Regarding Peeble v. Taylor, the officer in that case actually testified that he didn't ask defendant. He testified, no, I did not ask him. So that's just a little bit different. And the court said in that case that he actually held the PBT up to his mouth and that defendant would have to actually turn his head to deny the request or, you know, say no or have an opportunity to refuse. In this case, that didn't happen. So other than that, the people would just, if there are no further questions, would just ask the jurors. Thank you. Thank both of you for your arguments here this morning. This matter will be taken under advisement. Written disposition will be issued.